Argued and submitted December 4, 2018, affirmed October 9, 2019

BARKERS FIVE, LLC
and Sandy Baker,
*Petitioners,*

*v.*

LAND CONSERVATION AND
DEVELOPMENT COMMISSION,
Metro, Clackamas County, and Multnomah County,
*Respondents.*

Land Conservation and Development Commission
18ACK001894; A167937 (Control)

METROPOLITAN LAND GROUP,
*Petitioner,*

*v.*

LAND CONSERVATION AND
DEVELOPMENT COMMISSION,
Metro, Clackamas County, and Multnomah County,
*Respondents.*

Land Conservation and Development Commission
18ACK001894; A167956

SPRINGVILLE INVESTORS, LLC,
an Oregon limited liability company;
Burnham Farms, LLC,
an Oregon limited liability company;
David Blumenkron, an individual;
Katherine Blumenkron, an individual;
and Robert Zahler, an individual,
*Petitioners,*

*v.*

LAND CONSERVATION AND
DEVELOPMENT COMMISSION,
Metro, Clackamas County, and Multnomah County,
*Respondents.*

Land Conservation and Development Commission
18ACK001894; A167957

LANPHERE CONSTRUCTION
AND DEVELOPMENT, LLC.,
*Petitioner,*

*v.*

LAND CONSERVATION AND
DEVELOPMENT COMMISSION,
Metro, Clackamas County, and Multnomah County,
*Respondents.*

Land Conservation and Development Commission
18ACK001894; A167991

451 P3d 627

Petitioners seek judicial review of a 2018 order of the Land Conservation and Development Commission (LCDC), acknowledging the designation of urban and rural reserves that will guide growth in the Portland metropolitan area for the next several decades. The Court of Appeals had previously reversed and remanded LCDC's original acknowledgment order, following LCDC's review of Metro and Clackamas, Multnomah, and Washington counties' joint submittal, designating such reserves. *Barkers Five, LLC v. LCDC*, 261 Or App 259, 323 P3d 368 (2014) (*Barkers Five*). On judicial review of LCDC's 2018 acknowledgment order, the Court of Appeals writes to address the contentions of various petitioners that LCDC's order is unlawful in substance because it approved a new joint remand submittal in which (1) Metro and Clackamas and Multnomah counties failed to properly analyze whether the designated urban and rural reserves satisfied the "best achieves standard" of OAR 660-027-0005(2); (2) those governments' determination that the designation meets the best achieves standard was not supported by substantial evidence; and (3) Metro and Multnomah County failed to reconsider all of the Multnomah County designations consistently with the court's remand instructions in *Barkers Five*. *Held*: LCDC did not err in determining that the new joint submittal demonstrated compliance with the best achieves standard, concluding both that Metro and Clackamas and Multnomah counties had applied the required factors to arrive at specific urban and rural reserves and designations and that, considered in its entirety, the overall designation satisfied the qualitative best achieves standard. Further, the Court of Appeals was not persuaded that LCDC failed to correctly apply the substantial evidence standard in assessing the substantial evidence arguments concerning the best achieves standard. Finally, nothing in *Barkers Five* required reconsideration of urban and rural reserve designations throughout Multnomah County. The Court of Appeals rejected petitioners' remaining arguments without discussion.

Affirmed.

Wendie L. Kellington argued the cause for petitioners Barkers Five, LLC, and Sandy Baker. Also on the briefs were Kellington Law Group, P.C.; Matthew D. Lowe and Jordan Ramis PC.

Sara Kobak argued the cause for petitioner Metropolitan Land Group. Also on the briefs were Michael C. Robinson and Schwabe, Williamson & Wyatt, P.C.

Christopher James argued the cause for petitioners Springville Investors, LLC, Burnham Farms, LLC, David Blumenkron, Katherine Blumenkron, and Robert Zahler. Also on the briefs was The James Law Group, LLC.

Jeff Bachrach argued the cause and filed the briefs for petitioner Lanphere Construction and Development, LLC.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent Land Conservation and Development Commission. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Roger A. Alfred argued the cause and filed the brief for respondent Metro.

Nathan K. Boderman argued the cause for respondent Clackamas County. Also on the brief was Stephen L. Madkour.

Jed Tomkins argued the cause for respondent Multnomah County. Also on the brief was Jenny M. Madkour.

Before Hadlock, Presiding Judge, and Aoyagi, Judge, and Sercombe, Senior Judge.*

HADLOCK, P. J.

Affirmed.

_____

* Aoyagi, J., *vice* Garrett, J. pro tempore.

**HADLOCK, P. J.**

For the next few decades, growth in the Portland metropolitan area will be guided by the designation of urban and rural reserves.[1] Responding to a legislative charge to designate such reserves, Metro and Clackamas, Multnomah, and Washington counties jointly submitted a designation to the Land Conservation and Development Commission (LCDC) for its review in 2010. LCDC voted to acknowledge that joint submittal, as revised in 2011, and it issued an order acknowledging the submittal in 2012. On judicial review, we upheld LCDC's understanding of the foundational legal principles that govern designation of urban and rural reserves. *Barkers Five, LLC v. LCDC*, 261 Or App 259, 323 P3d 368 (2014) (*Barkers Five*). However, we concluded that LCDC had erred in applying those principles with respect to certain areas in each of the three counties. *See id*. at 363-64 (summarizing the reasons that LCDC's order was unlawful in substance). We therefore reversed and remanded the order. After further proceedings on remand— as well as intervening legislation, which we discuss below— another joint submittal was submitted to LCDC, which issued an acknowledgement order in 2018 approving the submittal. Petitioners now challenge that 2018 acknowledgement order.[2] As in *Barkers Five*, petitioners' assignments of error involve (1) fundamental issues concerning the validity and application of several of LCDC's administrative rules—including the "safe harbor" provision of OAR 660-027-0060(4)—and its application of the legal principles governing the designation of reserves; (2) the correctness of

---

[1] Urban reserves are lands designated "to accommodate population and employment growth" for a specified decades-long planning period. ORS 195.145(4). Rural reserves have been described as "'the lands that are critical to the functioning and long-term viability of the agricultural industry irrespective of soil quality'" or as lands so designated "'to protect important natural areas.'" *Barkers Five, LLC v. LCDC*, 261 Or App 259, 273-74, 323 P3d 368 (2014) (*Barkers Five*) (quoting legislator's statement during floor debate on the statute that authorizes designation of rural reserves). The factors that inform designation of urban and rural reserves, as well as the procedures associated with designation, are discussed at length in *Barkers Five*. *Id*. at 271-82.

[2] Four groups of petitioners appear separately on judicial review: (1) Barkers Five, LLC, and Sandy Baker (Barkers); (2) Metropolitan Land Group (MLG); (3) Springville Investors, LLC, David Blumenkron, Katherine Blumenkron, Robert Zahler, and Burnham Farms, LLC (Springville); and (4) Lanphere Construction and Development, LLC (Lanphere).

LCDC's substantial evidence review; and (3) general contentions that much of the decision-making involved in the reserves-designation process was impermissibly political. Having reviewed the voluminous record and considered each of the arguments presented on judicial review, we affirm.

In this opinion, we write primarily to address two of the contentions that petitioners raise on judicial review. Described broadly, those arguments are as follows. First, petitioners MLG, Springville, and Barkers challenge LCDC's order on the ground that the joint submittal reflected a failure by Metro and the counties to properly analyze whether the designated urban and rural reserves satisfy the "best achieves standard" that applies to urban and rural reserve designations in their entirety. Second, MLG and Springville contend that, on remand from our 2014 decision, Metro and Multnomah County should have reconsidered—but did not reconsider—all of the Multnomah County reserve designations; petitioners conclude that LCDC's order is unlawful in substance because it approved the joint submittal, which reflects that purported failing. We explain below why we are not persuaded by either of those arguments.[3] We reject petitioners' remaining arguments without extended discussion.

To provide context for the analysis that follows, we summarize the governing legal principles and pertinent aspects of the proceedings to this point. The 2007 legislature adopted a process and substantive guidelines for the designation of urban and rural reserves "to provide 'greater certainty' to commerce, industry, private land owners, and providers of public services by 'facilitat[ing] long-range planning' for both urban and rural uses." *Barkers Five*, 261 Or App at 271 (quoting ORS 195.139 (brackets in *Barkers Five*)). That legislation, codified in ORS chapter 195, specified certain factors that Metro and the counties must consider in the designation process. *Id.* at 271-75. For land proposed for designation as urban reserves, those factors relate to various

---

[3] Respondents assert that petitioners failed to preserve many of the contentions that they now raise on judicial review. For several reasons, resolution of those preservation issues is not straightforward. To the extent that they may fairly be viewed as preserved, we reject petitioners' contentions on the merits and do not further address respondents' preservation challenges.

aspects of urban development, including density, infrastructure, urban economics, housing, education and other public facilities, walkability, and ecology. *Id*. at 272-73 (citing ORS 195.145(5)). For proposed rural reserves, the specified factors generally relate to whether the land is capable of and suitable for agriculture and whether it is in "'an area that is otherwise potentially subject to urbanization[.]'" *Id*. at 274-75 (quoting ORS 195.141(3)).

In addition, two overarching principles guide the designations. First, an "amount of land standard" requires the designation of an amount of urban reserves sufficient to accommodate population and employment growth for "a period between 20 and 30 years beyond the 20-year [urban growth boundary (UGB)] planning period." *Id*. at 273 (explaining ORS 195.145(4)). Second, as articulated in an LCDC rule that describes the reasons for designating urban and rural reserves, the overriding "objective" of the designation process is:

> "a balance in the designation of urban and rural reserves that, in its entirety, *best achieves* livable communities, the viability and vitality of the agricultural and forest industries and protection of the important natural landscape features that define the region for its residents."

OAR 660-027-0005(2) (emphasis added). That objective, discussed at length in *Barkers Five*, is referred to as the "best achieves standard." *Barkers Five*, 261 Or App at 311-18.

With that context in mind, we turn to the procedural history of this case, as summarized in *Barkers Five* and in unchallenged parts of the 2018 LCDC acknowledgement order that is the subject of this opinion. After LCDC issued its initial 2012 acknowledgement order, 22 petitioners sought judicial review, raising both broad challenges to the legal premises underlying LCDC's decision and specific challenges to the reserves designations of particular areas of land. *Barkers Five*, 261 Or App at 264. Ultimately, we upheld the "fundamental legal premises underlying LCDC's review of the submittal," rejecting challenges to the meaning of the best achieves standard. *Id*. at 363. However, as pertinent here, we concluded that LCDC had erred in several respects, one that related to Washington County's

application of the rural reserve factors to agricultural land, one that related to Multnomah County's consideration of factors pertaining to the rural reserve designation of Area 9D, and one that related to LCDC's substantial evidence review of the Stafford's urban reserve designation. *Id*. at 364. Accordingly, we reversed and remanded the order for further proceedings. *Id*.

Shortly after we issued *Barkers Five*, the legislature passed House Bill (HB) 4078 (2014), which became effective on April 1, 2014.[4] Among other things, that bill established urban reserves and rural reserves in Washington County, thus removing the question of reserves designations in that county from the scope of the task on remand from this court.[5] Overall, HB 4078 reduced the quantitative amount of urban reserves in Washington County by 3,210 acres as compared to the amount that LCDC had upheld in the 2012 acknowledgement order.

LCDC subsequently issued an order remanding "Rural Reserve Area 9D to Multnomah County and Metro," as well as "Urban Reserve Areas 4A, 4B, 4C, and 4D"— the areas commonly referred to as Stafford—"to Metro and Clackamas County" so those governments could take "further action consistent with the principles expressed in *Barkers Five*[.]" The order contemplated that Metro and the counties would prepare a new joint submittal and it specified that LCDC would review the new submittal for compliance with the pertinent statutes and all applicable LCDC rules. No party sought judicial review of the scope of that LCDC order.

---

[4] HB 4078 was codified at ORS 195.144. That statute was subsequently amended in 2015 and 2019. Or Laws 2015, ch 150, § 1; Or Laws 2019, ch 199. The 2015 amendments to ORS 195.144 made "technical corrections necessary to implement House Bill 4078 (2014) as intended." Staff Measure Summary, House Committee on Rural Communities, Land Use, and Water, HB 2047, Feb 5, 2015, https://olis.leg.state.or.us (accessed Sept 24, 2019). The 2019 amendments narrowed the subset of land designated "as employment land of state significance." Staff Measure Summary, Senate Committee on Environment and Natural Resources, HB 2914A, May 14, 2019, https://olis.leg.state.or.us (accessed Sept 24, 2019). Those amendments do not affect our resolution of the issues in this case.

[5] HB 4078 was not limited to designating reserves in Washington County. Among other things, it also deemed certain property to be included within the acknowledged UGB. Or Laws 2014, ch 92, § 4.

In the summer of 2017, Metro submitted a new joint submittal (incorporating findings and ordinances earlier adopted by Clackamas and Multnomah Counties) for LCDC's consideration. Several objections were filed, including by each of the petitioners on judicial review. The Department of Land Conservation and Development (DLCD) issued a staff report in October 2017, to which petitioners filed exceptions. DLCD issued a supplemental staff report in November, LCDC held a public hearing the same month, and LCDC issued its acknowledgement order in May 2018.

LCDC's lengthy 2018 order acknowledges urban and rural reserve designations that, in Clackamas and Multnomah counties, are the same designations as those made in the 2012 order. In particular, the rural reserve designation for Area 9D in Multnomah County did not change. In that regard, LCDC noted that Multnomah County had adopted "supplemental findings and conclusions explaining why Area 9D was designated as rural reserve under the applicable factors." After evaluating those findings, LCDC concluded that Multnomah County had applied and balanced the pertinent rural reserve factors and had meaningfully explained why the entirety of Area 9D should be designated rural reserve. LCDC also concluded generally that the joint submittal complied with all applicable statutes and rules. Petitioners now seek judicial review of that 2018 acknowledgement order.

We first address the arguments that MLG, Barkers, and Springville make that are related to the best achieves standard. Petitioners contend that LCDC unlawfully approved a joint submittal that is flawed because (1) the submittal shows that Metro and the counties failed to engage in the type of balancing analysis that petitioners contend the best achieves standard requires, and (2) those governments' determination that the designation meets the best achieves standard is not supported by substantial evidence. For the reasons set out below, we disagree on both points.

As previously noted, the best achieves standard is established by LCDC rule:

"**Urban reserves** *** are intended to facilitate long-term planning for urbanization in the Portland metropolitan

area and to provide greater certainty to the agricultural and forest industries, to other industries and commerce, to private landowners and to public and private service providers, about the locations of future expansion of the Metro [UGB]. **Rural reserves** \*\*\* are intended to provide long-term protection for large blocks of agricultural land and forest land, and for important natural landscape features that limit urban development or define natural boundaries of urbanization. The objective of [LCDC's rules] is a *balance in the designation of urban and rural reserves that, in its entirety,* **best achieves** *livable communities, the viability and vitality of the agricultural and forest industries and protection of the important natural landscape features that define the region for its residents.*"

OAR 660-027-0005(2) (emphasis and boldface added).

LCDC explained its understanding of the best achieves standard in its 2012 acknowledgement order, and we addressed that standard in *Barkers Five*, determining that the following premises of LCDC's explanation of the standard were valid:

"*First*, the best achieves standard is a qualitative standard rather than a quantitative one.

"*Second*, the standard applies to Metro and the counties' joint designation in its entirety and not to the designation of individual properties or areas.

"*Third*, the best achieves standard allows for a range of permissible designations.

"*Fourth*, Metro and the counties must explain how the designation satisfies the best achieves standard through their findings concerning the application of the urban and rural reserve factors."

261 Or App at 311 (emphases in original; internal quotation marks omitted).

Significantly, we explained in *Barkers Five* that the "balancing" that the best achieves standard requires is "the balancing of three competing objectives" that are qualitative, not quantitative, in nature. *Id*. at 312. That is, nothing in the LCDC rule "suggests that there must be a quantitative balance in the amount of land designated as urban

reserves and the amount of land designated as rural reserves." *Id*. at 313.[6] Moreover, despite the rule's use of the word "best," the rule does not contemplate "a single, optimal designation." *Id*. at 314. Rather, the best achieves standard confers "legally circumscribed discretion" on Metro and the counties, *id*. at 315, the exercise of which could result in any of "a range of permissible designations," *id*. at 317.

Petitioners' arguments on judicial review relate to how both the 2017 joint submittal and LCDC's 2018 acknowledgement order treat that standard. The joint submittal discusses the standard at length. First, the submittal emphasizes that the "balance" contemplated by the best achieves standard is a balance of three objectives, two of which—"the viability and vitality of the agricultural and forest industries and protection of the important natural landscape features that define the region for its residents," OAR 660-027-0005(2)—"are primarily achieved through rural reserve designations" that are designed for "(a) protection of farm and forest and (b) protection of important natural resource features." The submittal notes that the reduction of urban reserves in Washington County through HB 4078 does not adversely affect achievement of those objectives; to the contrary, "that legislation enhanced the region's ability to achieve those two standards by adding approximately 2,780 acres of new rural reserves in Washington County, all of which is foundation agricultural land."

The submittal also explains why the third objective ("livable communities") and the best achieves standard were both met notwithstanding the reduction of urban reserves in Washington County:

---

[6] The structure of the pertinent LCDC rules reflects the absence of any requirement for a quantitative balance between urban reserves and rural reserves. OAR 660-027-0005 describes the best achieves standard, which, as explained in *Barkers Five*, focuses on balancing qualitative goals. Other division 27 rules set out the factors that must be applied in designating urban reserves (OAR 660-027-0050), the amount of land standard for urban reserves (OAR 660-027-0040(2)), and the factors to be applied in designating rural reserves (OAR 660-027-0060). Although the rules specify ways in which the *processes* for designating urban reserves and rural reserves must be coordinated (*e.g.*, OAR 660-027-0040(10)) the factors that apply to each of those types of reserves are laid out separately, and nothing in the rules suggests that designation of any particular amount of one type of reserve must influence the *quantity* of land designated for the other type of reserve.

"The third objective that must be balanced as part of the best achieves analysis is 'livable communities.' This objective is primarily achieved by designating areas across the region that will be the best locations to build 'great communities' through application of the urban reserve factors. As discussed in Section II of these findings, great communities are those that offer residents a range of housing types and transportation modes from which to choose. To that end, urban reserve factors (1), (3), (4) and (6) are aimed at identifying lands that can be developed in a compact, mixed-use, walkable and transit-oriented pattern, supported by efficient and cost-effective services.

"The reduction of urban reserves in Washington County by 3,210 acres does not impact the region's ability to build livable communities across the region over the next 40 to 50 years. The quantitative aspect of urban reserve planning is addressed by [the amount of land standard] that requires sufficient acreage for up to 50 years of urban growth. Meanwhile, the directive of the best achieves standard to provide livable communities is aimed at designating highest *quality* of locations that can provide a range of housing types and transportation modes, as well as efficient public services. As [an earlier section of the joint submittal had explained], the existing urban reserve acreage in the region still provides a sufficient amount of land for urban growth over the next 40 to 50 years. The fact that House Bill 4078 reduced the amount of urban reserves from 26,241 to 23,031 acres has no effect on the region's ability to plan and build livable communities on those 23,031 acres over the next several decades. *Therefore, the balance in the designation of urban and rural reserves, in its entirety, still achieves the goals of providing livable communities, viability and vitality of farm and forest industries, and the protection of important natural landscape features that define the region.*"

(First emphasis in original; second emphasis added.)

In reviewing challenges to that submittal, LCDC described its task as considering whether "the joint submittal explains" how the designation of urban and rural reserves meets the best achieves standard. Finding the joint submittal "mindful of the four legal premises" underlying the standard that we identified in *Barkers Five*, LCDC described the submittal as having addressed "issues related

to the regionwide supply of urban reserves and the overall balance of reserves in light of (a) the adoption of the current [Urban Growth Report] \* \* \*, and (b) the Oregon Legislature's enactment of House Bill 4078." LCDC ultimately determined that the submittal "demonstrate[d] compliance with" the best achieves standard, concluding both that Metro and the counties had applied the required factors to arrive at specific urban and rural reserves designations and that, considered in its entirety, the overall designation "meets the qualitative [best achieves] standard."

Barkers challenges LCDC's conclusion, arguing that the joint submittal "applied an improper methodology that failed to conduct any 'balancing' as required under the [best achieves] standard." That argument is grounded on the reduction in Washington County urban reserves resulting from HB 4078. Barkers criticizes the joint submittal for having considered the *adequacy* of the remaining urban reserves "in isolation," without having separately evaluated whether the resulting *balance* of urban and rural reserves "best achieves" the objectives set out in OAR 660-027-0005(2). Because "the methodology employed by Metro and the counties contained no evaluation or consideration of the balance in the designation of urban and rural reserves," Barkers asserts, LCDC's order approving the joint submittal is unlawful in substance. In response, Metro argues that the joint submittal includes "detailed findings" that properly explain how "the *qualitative* balance of the three [OAR 660-027-0005(2)] objectives was impacted by the House Bill 4078 adjustments" and why those three objectives "are still 'balanced' through the reserve designations notwithstanding" those changes. (Emphasis in original.)

We agree with Metro. When HB 4078 reduced urban reserves in Washington County, Metro and the other counties were not required to reweigh the *quantitative* amounts of urban and rural reserves to determine whether they remained in optimal balance. Rather, their task was to consider, again, whether the designations were balanced in the sense that—in the governments' judgment, applying the pertinent factors—the designations best achieve the objectives of "livable communities, the viability and vitality

of the agricultural and forest industries and protection of the important natural landscape features that define the region for its residents." OAR 660-027-0005(2); *see also* OAR 660-027-0040(10) (the joint submittal must explain how the urban and rural reserve designations "achieve the objective stated in OAR 660-027-0005(2)").

Here, the joint submittal accomplishes that in a series of steps. First, it explains that the HB 4078 reduction in Washington County urban reserves does not leave the region with an insufficient *amount* of land for urbanization. Next, the joint submittal addresses whether the remaining urban reserves achieve the goal of "designating [the] highest *quality* of locations that can provide a range of housing types and transportation modes, as well as efficient public services." (Emphasis in original.) That qualitative and locational emphasis is appropriate in light of the focus on creation of "livable communities" in OAR 660-027-0005(2) and in light of the "Great Communities" report that informed development of the statutory urban reserve factors. *See generally Barkers Five*, 261 Or App at 269-73 (discussing development of the reserve factors). The submittal concludes that the reduction of urban reserves in Washington County had "no effect on the region's ability to plan and build livable communities" on the remaining urban reserves over the next several decades. Because the remaining urban reserves achieved the same *qualitative* goals as did the initial urban reserves, Metro and the counties determined that the resulting balance of agricultural, forestry, urbanization, and natural demands met the best achieves standard, notwithstanding the *quantitative* reduction of urban reserves under HB 4078. Thus, the record supports LCDC's determination that Metro and the counties appropriately considered the best achieves standard on remand.

Although Barkers disclaims any such intention, its argument to the contrary depends on a notion that the best achieves standard requires these two things: (1) that Metro and the counties weigh the *quantitative* amounts of land designated as urban and as rural reserves, and (2) that those governments identify a *single best* quantitative balance. As we have explained above, neither of those premises is correct. Rather, on remand (as initially), the best achieves standard

required Metro and the counties to determine whether the region-wide designations accomplish "'a balance between encouraging further urban expansion versus land conservation.'" *Barkers Five*, 261 Or App at 312 (quoting LCDC). Significantly, Metro and the counties are not required to rank possible alternative designations to determine which is optimal. *Id*. at 314. Instead, in seeking to balance the competing priorities, the governments act with "legally circumscribed discretion" that allows selection of any one of "a range" of regional designation options based on the pertinent statutory and regulatory factors. *Id*. at 315; *see id*. at 318. We therefore reject Barkers' arguments to the extent that it suggests that the joint submittal is flawed either because it did not *quantitatively* rebalance the amount of reserves or because it did not seek to identify the *single best* balance.[7]

MLG makes a different argument based on the best achieves standard, contending that the record does not include substantial evidence "to support findings that the

---

[7] In some respects, Barkers' argument appears to rely on a single, concluding sentence in the joint submittal:

"Therefore, the balance in the designation of urban and rural reserves, in its entirety, *still achieves* the goals of providing livable communities, viability and vitality of farm and forest industries, and the protection of important natural landscape features that define the region."

(Emphasis added.) Barkers contends that the submittal's use of the words "still achieves" demonstrates that Metro and the counties did not reconsider what balance would "best achieve" the specified goals, but merely determined— essentially working backwards from existing designations to each of the three goals—whether the existing designations "still" met the legal standard. We understand Barkers to argue, at least implicitly, that LCDC erred by concluding otherwise.

That argument inappropriately focuses on a single word ("still") without considering the context in which it is used. As explained above, the joint submittal— read as a whole—indicates that Metro and the counties appropriately considered on remand whether, despite HB 4078, the initial *qualitative* factors that went into the "best achieves" balancing had changed; because they had not, the governments could properly conclude, again, that the region-wide designations "best achieve" the desired qualitative balance. Barkers attributes more weight to the word "still" than it can bear in this context. Read as a whole, the joint submittal explains the governments' determination that the original designations best achieve the required qualitative balance and why, even after accounting for the changes effectuated by HB 4078, the designations continue to (or "still") best achieve that balance. LCDC was not required to conclude, based on the quoted sentence, that the governments did not properly apply the best achieves standard on remand.

urban reserves satisfy the best-achieves standard." (Capitalization omitted.) It asserts that Metro and the counties engaged in no meaningful review of the designations under the best achieves standard, because they failed to adequately account for the quantitative changes effected by HB 4078 and the capacity of lands in the region to accommodate future urbanization.

In reviewing such record-based arguments on judicial review of the LCDC order, we do not determine ourselves whether substantial evidence in the record supports the joint submittal's findings. Rather, we determine whether LCDC properly performed that task:

> "To the extent that the parties contend that the order on review is unlawful in substance because LCDC misapplied its standard of review for substantial evidence, our role is not to review Metro and the counties' submittal for evidentiary support. Instead, we determine whether LCDC understood and applied the substantial evidence standard correctly. In that regard, where LCDC properly articulates the substantial evidence standard of review, we will affirm unless the evidence is so at odds with LCDC's evaluation that we can infer that LCDC misunderstood or misapplied the proper standard."

*Barkers Five*, 261 Or App at 348 (internal quotation marks and citations omitted).

Having reviewed the record, the joint submittal, and LCDC's acknowledgement order—as well as the parties' briefing—we are not persuaded by MLG's contention that LCDC failed to correctly apply the substantial evidence standard when it assessed MLG's substantial evidence arguments related to future urbanization. We therefore reject that aspect of MLG's best achieves argument without further discussion.

Finally, we address arguments relating to the scope of our remand in *Barkers Five*. The ultimate disposition in that case was to "reverse and remand [LCDC's 2012 acknowledgement] order for further action consistent with the principles expressed in [the] opinion." *Barkers Five*, 261 Or App at 364. On remand from LCDC, Metro and the counties generally did not reconsider urban and rural

reserves designations for areas other than those that we had expressly held, in *Barkers Five*, required additional review of the reserves factors or, at least, additional explanation for the designations. MLG and Springville contend that was error. They point to our determinations in *Barkers Five* that (1) LCDC erred in concluding that Multnomah County had adequately considered the pertinent factors in designating Area 9D as rural reserve, and (2) on remand, "LCDC must determine the effect of that error on the designation of reserves in Multnomah County in its entirety." 261 Or App at 347. Thus, MLG argues, "Metro and the counties should have reconsidered the regional reserve designations in their entirety," specifically including designation of property owned by MLG. Relatedly, Springville argues that Multnomah County was required to reconsider, on remand, its previous designation of Area 9B, even though we did not remand that area for reconsideration in *Barkers Five*.

In response, Multnomah County asserts that "LCDC determined correctly that [*Barkers Five*] did not require reconsideration of all reserves in Multnomah County, but instead required review for any *resultant consequences* (*i.e.*, 'effect') of the Area 9D error on other designations in the county." (Emphasis in original.)

We agree with the county. In *Barkers Five*, we expressly stated, with respect to each of the errors that we identified, the tasks that LCDC, Metro, and the counties would have on remand. Those tasks varied in scope with respect to designations in each of the counties. On one end of the spectrum, we determined that Washington County had erroneously applied rural reserve factors to designations throughout the county. That is, the county's *overall* "analysis of the rural reserve factors was legally impermissible[.]" *Id*. at 332. Accordingly, we observed, correction of that error could have "pervasive consequences." *Id*. at 350. For that reason, we required LCDC to "remand Washington County's reserves designation *as a whole* for reconsideration. *Id*. at 333 (emphasis added).[8] Moreover, because the Washington County designations had to be remanded for reconsideration

_____

[8] That did not occur, of course, because the legislature itself subsequently designated Washington County reserves through HB 4078.

in their entirety, we declined to consider other challenges to the existing reserves designations in that county. *Id*. at 333, 350.

We more narrowly described the consequences that would follow remand associated with an error in Multnomah County. We agreed with Barkers that LCDC had erred in concluding that the county had adequately considered the pertinent factors in designating Area 9D as rural reserve. *Id*. at 340-47. That error was area-specific. It was not foundational like the Washington County error that necessitated reconsideration of urban and rural reserve designations throughout the county. Thus, we did not require that Multnomah County reconsider its designations "as a whole," county wide. Instead, we explained that, on remand, LCDC would need to "*determine* the effect of [the Area 9D] error on the designation of reserves in Multnomah County in its entirety." *Id*. at 347 (emphasis added).

On remand, LCDC did just that. It observed that Multnomah County had addressed the Area 9D error that we identified in *Barkers Five* by providing additional, detailed explanation of why a rural reserve designation was appropriate for all of Area 9D, despite certain dissimilarities between the northern and southern portions of that area. The county next addressed what effect the previously identified Area 9D error had "on the designation of reserves in Multnomah County in its entirety," consistently with our instructions. *Id*. The county determined that the error had no such effect, because correction of the error did not alter the Area 9D rural reserve designation or the designation of any other reserves in Multnomah County. LCDC agreed with that analysis, determining "that there is no effect on the designations of reserves in Multnomah County in its entirety." That determination, which we consider reasonable, satisfied our requirement that LCDC "determine" the effect of the Area 9D error on remand. Nothing in *Barkers Five* required reconsideration of urban and rural reserve designations throughout Multnomah County. We are not persuaded by MLG's and Springville's contrary arguments.

We have considered each of the additional arguments that petitioners make on judicial review, and we reject

those additional arguments without discussion. Accordingly, we affirm LCDC's 2018 acknowledgement order.[9]

Affirmed.

---

[9] Respondents are the prevailing parties in this case. We have considered the availability of an award of costs and have decided to exercise our discretion not to award them.